Barceló & Cía., S. en C., demandante y apelada, *v.* Rafael Sancho Bonet, sustituído por Rafael Buscaglia, Tesorero de Puerto Rico, demandado y apelante.

Núm. 9289.—*Sometido:* Noviembre 13, 1946. *Resuelto:* Marzo 31, 1947.

*Hon. Procurador General Interino Luis Negrón Fernández (E. Campos del Toro, ex Procurador General, en el alegato) y J. B. Fernández Badillo, Procurador General Auxiliar,* abogados del apelante; *Félix Ochoteco, Jr. y Luis E. Dubón,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Dos son las cuestiones envueltas en este recurso, a saber, 1ra., si la bebida alcohólica producida y vendida por la apelada es un ''espíritu'' de acuerdo con la definición contenida en la sección 2(*b*) de la Ley número 1 aprobada el 12 de marzo de 1934 (pág. 137) y reenactada por la número 1 de 29 de junio de 1935 ((2) pág. 3), o sea, la Ley de Bebidas de Puerto Rico, y como tal sujeta al pago del arbitrio provisto por la sección 3(*c*) de la misma ley, y 2da., si las botellas y canecas utilizadas por la apelada para envasar su

producto están sujetas al pago del arbitrio provisto en la sección 4 de dicha ley. Suscintamente expuestos los hechos son los siguientes:.

Barceló & Cía., S. en C., se dedica a la industria de rectificar y fabricar bebidas alcohólicas para el uso y consumo de seres humanos y obtuvo la correspondiente licencia de rectificador de acuerdo con la Ley de Bebidas de Puerto Rico, dedicando toda su producción para la venta para lo cual la envasaba en botellas o canecas de cristal. Entre agosto 1 de 1934 y julio 15 de 1935 la apelada declaró al Tesorero de Puerto Rico tener fabricados y listos para la venta 512,374 litros de una bebida alcohólica conocida bajo el nombre de ron producida mediante el procedimiento de mezclar agua con alcohol destilado, puesta a envejecer dicha mezcla en envases adecuados y luego agregándosele espíritus alcohólicos más antiguos o vinos para mejorar el producto. Sobre estos 512,374 litros de bebidas alcohólicas la apelada pagó bajo protesta arbitrios ascendentes a $102,376.80 a razón de veinte centavos por cada litro o fracción de litro, los cuales le exigió el apelante de acuerdo con la sección 3(c) de la Ley de Bebidas. Son estos arbitrios cuya devolución solicita la apelada en la primera causa de acción de su demanda. En la segunda se reclama la devolución de $7,773.54 pagados también bajo protesta como arbitrios impuestos por el apelante, bajo la sección 4 de la misma ley, sobre las botellas o canecas introducidas en Puerto Rico por la apelada y en las cuales envasó para la venta su producto.

La corte inferior declaró con lugar la demanda en ambas causas de acción y el Tesorero apeló.

▆▆▆ Veamos la primera cuestión. La sección 3(c) de la Ley de Bebidas, dispone, en lo pertinente, que:

"Se impondrá, cobrará y pagará sobre las siguientes bebidas producidas, importadas o traídas a Puerto Rico, un impuesto de: . . . (c) . . . veinte (20) centavos por cada litro de espíritus, y un impuesto igual por cualquier cantidad o fracción de la misma . . ."

En la sección 2(b) de la misma ley se define la palabra "espíritu" en esta forma:

"La palabra 'espíritu' significa cualquier bebida que contenga alcohol obtenido por destilación mezclada con agua potable y otras substancias en solución, incluyendo brandy, *ron,* whisky, cordiales y ginebra." (Bastardillas nuestras.)

La corte inferior consideró que, de acuerdo con la prueba presentada, se habían probado los siguientes hechos:

"La prueba no contradicha de la demandante demuestra que pagó al demandado, en su carácter de Tesorero de Puerto Rico, un arbitrio de 20¢ por cada litro o fracción de litro de los 512,374 litros de la bebida alcohólica a que se refiere la demanda que fué producida por la demandante mezclando agua con alcohol adquirido de la Puerto Rico Distilling Company, a 190 grados prueba con excepción de 51,500 litros, a los cuales le había agregado también vino. De acuerdo con esa prueba el producto de la demandante era, en cuanto a 460,874 litros, alcohol diluído con agua para rebajar su fuerza alcohólica de 190 grados prueba, como se adquiría de la destilería, a 95 grados prueba, que era como se ponía a la venta del público, y en cuanto a los otros 51,500 litros, alcohol diluído también con agua en la misma forma del anterior; pero con vino agregado además, y así diluído y mezclado con vino, puesto a la venta del público. Demostró también dicha prueba que el arbitrio de 25¢ por cada litro o fracción de litro correspondiente al alcohol utilizado por la demandante en la elaboración y producción de los 512,374 litros de la bebida alcohólica antes referida, fué pagado por dicha demandante como parte de su precio de compra del referido alcohol, al adquirirlo a 190 grados prueba de la destilería de la Puerto Rico Distilling Company en Arecibo, Puerto Rico. Por la prueba de la demandante y las aceptaciones contenidas en la contestación del demandado, quedó demostrado que la bebida alcohólica a que se refiere la demanda, fué vendida por la demandante envasada en botellas o canecas introducidas por ella vacías de fuera de Puerto Rico, ninguna de cuyas botellas fueron fabricadas en la Isla; demostrándose también que debido a la naturaleza líquida de la referida bebida alcohólica, tenía necesariamente que ser envasada para poder realizarse su venta; que el envase de la bebida lo realizaba la demandante en su fábrica de Arecibo, pasando los envases directamente con la bebida alcohólica contenida en los mismos, a poder del comprador del producto, siendo el envase en Puerto Rico de dicha bebida, uno

de los pasos o elementos usuales, necesarios e imprescindibles del negocio e industria de rectificación y tráfico de bebidas alcohólicas a que estaba dedicada la demandante.''

Y a base de estos hechos y después de citar las secciones 3(c) y 2(b), supra, resolvió que ''una mezcla de alcohol obtenido por destilación con agua potable solamente no es un 'espíritu', dentro de la definición contenida en la Ley, sino simplemente alcohol diluído, alcohol rebajado a un grado de prueba más bajo mediante la adición de agua sin que por ello deje de ser alcohol.'' Resolvió, además, que de acuerdo con la declaración del perito Angel M. Pesquera y las definiciones que dan los diccionarios ''ron'' es el producto de una destilación y que siendo la bebida producida por la demandante una ''mezcla de alcohol con agua potable es simplemente alcohol diluído y una mezcla de alcohol con agua y vino es alcohol diluído con vino, mezcla ésta última que de acuerdo con . . . la sección 2(e)(¹) de la misma Ley de Bebidas, es también 'alcohol'.'' Como consecuencia decidió que la bebida producida por la demandante no es un ''espíritu'' y por tanto no estaba sujeta como tal al arbitrio provisto en la sección 3(c), supra. Resolvió, por último, la corte inferior que de ser dicha bebida un ''espíritu'' el arbitrio sería ilegal por constituir una doble tributación ya que sobre el alcohol original utilizado se había pagado un arbitrio; que de imponérsele otro arbitrio a la bebida producida con dicho alcohol al ser mezclado con agua o con agua y vino, convertiría la contribución en confiscatoria.

La sección 2 de la Ley de Bebidas en sus distintas subdivisiones contiene una serie de definiciones de varias pa-

---

(¹) Esta sección dispone:

''Las palabras 'bebida alcohólica' o 'bebida' incluyen las cuatro variedades de licores antes definidas (alcohol, espíritu, vino y cerveza) y cualquier líquido o sólido patentizado o no que contuviere alcohol, espíritu, vino o cerveza capaz de ser consumido por un ser humano. Cualquier líquido o sólido que contuviere más de una de las cuatro variedades antes definidas será considerado como correspondiente a aquella variedad que tuviere mayor grado de alcohol de acuerdo con el orden en que han sido anteriormente definidas, excepto lo dispuesto en la sub-sección (c).''

labras usadas en la ley, pero limita dichas definiciones diciendo que "En la interpretación de esta Ley, *a menos que su contexto indique lo contrario,*" dichas palabras significan lo que en dichas subdivisiones se especifica. (Bastardillas nuestras.) La corte inferior, a nuestro juicio, hizo caso omiso de esta regla de interpretación al limitar la definición de la palabra "ron" a lo declarado por el perito Pesquera y a las definiciones contenidas en diccionarios al efecto de que el ron únicamente es el producto de una destilación y que siendo la bebida producida por la apelada el resultado de una mezcla de alcohol con agua y con vino, dicha bebida es simplemente alcohol diluído. No tomó en consideración ni mencionó la corte sentenciadora las subdivisiones (*f*) y (*g*) de la sección 2 que disponen lo siguiente:

"(*f*) La palabra 'destilador' significa toda persona que elabore espíritus destilados, o que, por cualquier procedimiento de destilación separe espíritus, ya sean puros o impuros, de cualquier substancia, fermentada o no; o que, estando en posesión de o mediante el uso de un alambique, haga, prepare o esté en posesión de alguna substancia propia para la destilación.

"(*g*) La palabra 'rectificador' significa toda persona que rectifique o redestile espíritus destilados por un procedimiento que no sea el que originalmente se usa, y continúa la destilación de cualquier substancia fermentada mediante el uso de bocoyes tapados o cañerías hasta que su fabricación se complete, y toda persona que sin rectificar o redestilar espíritus destilados, colore, filtre, clarifique, refine o fortifique los mismos mezclando dichos espíritus u otro licor con alguna substancia que no sea agua, o que mezclare, colorare, fortificare, carbonatare, o compusiere licores bajo el nombre de *whisky*, ginebra, brandy, ron, cordial, amargo, espíritu o 'ponches' o que compusiere cualquier otra bebida espirituosa bajo cualquier otro nombre, excepto vino."

La apelada tenía una licencia de rectificador y es un hecho admitido que se dedicaba a la industria de rectificar y fabricar bebidas alcohólicas para el consumo humano. Dentro del significado de la palabra rectificador dado en la subdivisión (*g*)—muy distinto al de la palabra destilador de la

subdivisión (*f*)—está incluído el de "toda persona que *sin rectificar o redestilar espíritus destilados . . . compusiere licores bajo el nombre* de whisky, ginebra, brandy, *ron,* cordial, amargo, espíritu o 'ponches' . . ." De manera que, independientemente del hecho de que el ron está incluído entre los "espíritus" mencionados en la sección 2(*b*), no se limita el alcance del significado de la palabra "ron" a aquéllos que puedan dar un perito o los diccionarios en cuanto a que dicha bebida es el producto de una destilación, sino que del contexto de la misma Ley de Bebidas, en su sección 2(*g*), dicha palabra "ron" también significa un licor compuesto por un rectificador bajo el nombre de ron, aun cuando dicho licor no haya sido el resultado de una destilación. Y en el caso de autos la apelada compuso un licor bajo el nombre de "Ron Palo Viejo" y bajo dicho nombre lo declaró el apelante y lo puso a la venta en el mercado.(²) (Bastardillas nuestras.)

En ningún momento la apelada declaró al Tesorero de Puerto Rico ni al público consumidor, que su producto fuera alcohol diluído con agua o con vino y no puede ahora eludir el pago del arbitrio correspondiente habiéndose beneficiado de la venta de su producto bajo el nombre de "Ron Palo Viejo." En *United States* v. *J. D. Iler Brewing Co.,* 121 Fed. 41, se resolvió que: " . . . Al poner el demandante en sus botellas el rótulo 'J. D. Iler's Rochester Tonic' hizo constar prominentemente en el envase que su tónico era de carácter tónico o medicinal. La ley no requiere que se enumeren en el envase los ingredientes o la fórmula del tónico. Se supone que el demandante se ha ceñido a la ley, que prohibía a riesgo de fuerte penalidad el embarque o el levantamiento de sus licores fermentados, bajo cualquier otro nombre que no fuera el correspondiente para designar su clase

(²)El socio gestor de la apelada declaró: "P. ¿Cómo rotulaban las botellas y canecas que contenía ese licor? R. Ron Palo Viejo." (T. E., pág. 13.) Y más adelante dijo que habían declarado el producto al Tesorero de Puerto Rico como ron. (T. E., pág. 19.)

y calidad. El demandante conocía los ingredientes y calidades de sus productos, y con conocimiento de esto, y con el conocimiento ulterior de que la ley exigía a riesgo de una fuerte penalidad, que se marcaran o se rotularan sus paquetes con el 'nombre correspondiente' de sus productos, deliberadamente eligió llamar y rotular este producto como 'Tónico Rochester' y lo lanzó al mercado como tal, obteniendo una excelente venta para dicho producto en la forma indicada. Habiendo disfrutado de todos los beneficios de la venta como un tónico, ya es muy tarde para que le llamemos por cualquier otro nombre a los fines de evitar la contribución. Tanto la ley como la moral impiden se conceda tal reclamación. Nos sentimos constreñidos a aceptar el nombre con que el propio demandante bautizó su producto bajo las más serias sanciones y de esa manera absolverlo de una intención deliberada para perpetrar un fraude hacia el público 'e infringir las leyes penales de los Estados Unidos.''

La sección 21 de la Ley de Bebidas exige que ''Toda botella u otro envase conteniendo bebidas alcohólicas o productos medicinales, de cualquier clase o naturaleza que fueren, manufacturados en Puerto Rico o importados o traídos a Puerto Rico, llevarán fija una etiqueta en la cual se haga constar específica y distintamente el contenido alcohólico por volumen de dichas preparaciones. Las preparaciones producidas o fabricadas en Puerto Rico serán rotuladas antes de sacarse de la fábrica, almacén o depósito y a las que se importaren o trajeren a Puerto Rico se les pondrá la etiqueta antes de sacarse de la aduana, 'express', o del poder de los dueños o agentes de los barcos en que se trajeren a Puerto Rico,'' y la sección 55 hace un delito el rotular falsa o incorrectamente el contenido de alcohol de cualquier bebida. Si, como aparece de la prueba, el alcohol original usado tenía 190 grados prueba y en la bebida producida por la apelada dicho alcohol fué rebajado a 95 grados prueba y declarado y vendido como ron, debemos aceptar el nombre que la apelada le dió a su producto y no aceptar que fuera su intención

perpetrar un fraude al público ofreciéndole y vendiéndole algo distinto de lo que en efecto declaró al apelante y vendió al público.

Pero es que no sólo a virtud de la sección 2(*g*), supra, la bebida producida por la apelada debe considerarse como ron, sino que de acuerdo con la sección 2(*b*), supra, el ron es una de las bebidas que por contener alcohol es un espíritu, dentro de la especificación allí establecida.

Los casos citados por la corte inferior[3] para sostener lo contrario no son aplicables a los hechos del de autos. Se interpretó en ellos disposiciones de distintas leyes de rentas internas federales que prohibían, bajo pena de confiscación, que se hiciera un cambio en el contenido de un receptáculo conteniendo espíritus destilados después de habérsele adherido los sellos de rentas internas correspondientes al arbitrio ya satisfecho por dichas bebidas y se resolvió que el haberse agregado agua o caramelo a un producto que ya había pagado los tributos no constituía una violación que justificara la confiscación. La cuestión envuelta en el presente caso precisamente es si procedía o no el pago de los arbitrios correspondientes a la bebida producida por la apelada con el nombre de ron y no si satisfechos dichos arbitrios procedía cobrarle otros o confiscarle el producto por haberle agregado al mismo agua o caramelo.

El caso de *Puerto Rico Distilling Co.* v. *Tesorero de P. R.*, 32 D.P.R. 576, tampoco es aplicable a los hechos del presente. Existía en aquél la circunstancia de que, tanto por el Reglamento Federal de la Prohibición como por ley insular, se eximía del pago de tributos al alcohol desnaturalizado usado en las artes, industrias o como combustible y que por tanto no podía imponérsele un arbitrio a un sustituto de la gasolina fabricada con alcohol desnaturalizado.

---

[3] *United States* v. *Thirty-Two Barrels of Distilled Spirits*, 5 Fed. 188; *United States* v. *One Package of Distilled Spirits*, 88 Fed. 856; *Three Packages of Distilled Spirits*, 14 Fed. 569; *United States* v. *Graf Distilling Co.*, 208 U.S. 198, 52 L. Ed. 452; *United States* v. *Bardenheier*, 49 Fed. 846.

Somos de opinión que la bebida alcohólica producida por la apelada, aun cuando técnicamente pueda considerarse como alcohol diluído con agua o con vino, constituía un espíritu ya que la apelada bajo el nombre de ron lo compuso, declaró y vendió y porque siendo ron está incluído expresamente en la sección 2(b), supra. Hemos resuelto que alcohol diluído con agua y puesto a envejecer se transforma en ron y que "Transformado el alcohol puro en otro artículo, éste y no el alcohol primitivo constituía la sustancia sobre la cual pesaba el impuesto . . . " *P. R. Distilling Co.* v. *Hill, Tesorero,* 26 D.P.R. 526, 32.

Siendo el ron un artículo distinto del alcohol original usado en su producción, el arbitrio impuesto al ron no constituye una doble contribución. *Monllor & Boscio, Sucrs.* v. *Sancho Bonet, Tes.,* 61 D.P.R. 67, confirmado en 136 F.2d 114. Erró, pues, la corte inferior al declarar con lugar la primera causa de acción.

▮ Veamos la segunda cuestión planteada por el apelante cuando alega que la corte sentenciadora erró al sostener que la sección 4 de la Ley de Bebidas, que impone un arbitrio sobre envases, sólo es aplicable cuando son introducidos en Puerto Rico, si los mismos contienen bebidas de las mencionadas en la ley pero no si son introducidos vacíos.

La sección 4, en parte, dice así:

"Sobre todo envase introducido o manufacturado en Puerto Rico *que contuviere bebidas alcohólicas* y productos similares conocidos bajo cualquier nombre, y espíritus y alcohol, siempre y cuando que *el contenido* de los mismos esté sujeto a un impuesto prescrito por esta Ley, se pagará la siguiente contribución: . . ." (Se especifican). (Bastardillas nuestras.)

La sección 2 (*n*) define la palabra envase como "cualquier botella, vasija, jarro, damajuana, o cualquier otro receptáculo que contuviere bebidas de las mencionadas en esta Ley."

La corte inferior resolvió que "como el arbitrio se impone sobre el envase por razón del mero hecho de contener

bebidas alcohólicas tributables, dicho arbitrio, en lo que concierne al envase de Puerto Rico de bebidas alcohólicas tributables, es un arbitrio por el acto de envasar bebidas alcohólicas tributables (citas). Y como la Ley impone a la demandante una contribución de licencia para dedicarse al negocio o industria de rectificador y de traficante al por mayor en bebidas alcohólicas, contribución ésta que pagó la demandante, un arbitrio adicional a dicha demandante por el acto de envasar en Puerto Rico bebidas alcohólicas tributables, aunque esté calculado o estimado a base del número y capacidad de los receptáculos utilizados para envasar dichas bebidas alcohólicas, siendo como es, ese acto de envasar uno de los pasos o elementos usuales, imprescindibles e inherentes del negocio o industria de fabricación o rectificación y tráfico o venta de bebidas alcohólicas tributables en Puerto Rico, es ilegal. (Citas.)''

Citó, además, la corte inferior el caso de *Monllor & Boscio, Sucrs.* v. *Tesorero,* 49 D.P.R. 576, en el cual esta Corte, refiriéndose a esta misma sección 4 de la Ley de Bebidas de 1934, reenactada por la Ley número 1 de 1935, dijo:

"De acuerdo con esas leyes, el Tesorero impuso y trató de cobrar mediante embargo el impuesto que autorizan sobre los envases de la demandante. ¿Pudo hacerlo? Si lo dispuesto por ellas estuviera en vigor, *la cuestión sería dudosa,* pero el 30 de julio de 1935 el propio legislador decretó por el segundo disponiéndose de la sección 69 de la Ley núm. 38 de ese año (pág. 485) lo que sigue:

" ' . . . Y disponiéndose, además, que en lo que se refiere a la sección 4 de la Ley No. 1 de 12 de marzo de 1934 y por la Ley No. 1 de 29 de junio de 1935, por la presente se determina que el Tesorero de Puerto Rico se abstendrá de cobrar cualquier impuesto o impuestos que conforme a lo que provee dicha Sección estuvieren pendientes de imposición y cobro.' '' (Bastardillas nuestras.)

y resolvió desestimar por frívolo el recurso contra la sentencia dictada por la corte inferior declarando con lugar un *injunction* para impedir la imposición y cobro del arbitrio provisto en la sección 4.

En el caso de *Monllor & Boscio,* supra, solamente expusimos dudas en cuanto a la validez de lo dispuesto en la sección 4, supra, pero debemos resolver ahora si la corte inferior erró al llegar a la conclusión por los fundamentos que expuso, de que dicho arbitrio es ilegal.

Ya hemos visto que la Legislatura determinó en la Ley número 38 de 1935 que el Tesorero se abstendrá de cobrar cualquiera de los impuestos pendientes de imposición y cobro a virtud de la sección 4, supra. Ignoramos los motivos que tuvo para hacerlo, pero lo hizo y ahora, en la nueva ley, se eliminó por completo el arbitrio sobre los envases provisto en la sección 4, supra.

 Sostiene el apelante que los arbitrios impuestos por la sección 4, supra, son por el uso de los envases que se utilicen para embotellar bebidas tributables y que la clasificación hecha por la Legislatura en cuanto a dichos envases es válida tomando en consideración el fin para el cual son usados.

Arguye a su vez la apelada que habiendo pagado una licencia como rectificador y otra como traficante al por mayor y además teniendo que pagar el arbitrio sobre las bebidas alcohólicas y no pudiendo ser éstas vendidas si no están debidamente envasadas, la imposición de un arbitrio adicional a los envases constituye una nueva contribución sobre la propiedad, es decir, sobre las bebidas; que dicho arbitrio se impone y se cobra por el acto de envasar licores; que la clasificación es irrazonable y por cualquiera de estas interpretaciones el arbitrio es ilegal.

Somos de opinión que la sección 4 imponía el arbitrio correspondiente a los envases introducidos o manufacturados en Puerto Rico al ser usados para envasar bebidas alcohólicas, productos similares conocidos bajo cualquier nombre, espíritus y alcohol, siempre y cuando que dichos productos estén sujetos a un arbitrio. El fin perseguido, o sea, la intención legislativa, fué gravar los envases que contuvieran

bebidas alcohólicas aun cuando pasaran al comprador con el producto.

Es un hecho admitido que la sección 4 no impone arbitrio alguno al envase como tal, es decir, mientras está vacío. Es al envase introducido o manufacturado en Puerto Rico, "que contuviere bebidas alcohólicas . . . siempre y cuando que el contenido. . . esté sujeto a un impuesto prescrito por esta ley . . ." que se impone el tributo. Tenemos, por lo tanto, que la Legislatura ha hecho a los fines contributivos una clasificación especial de estos envases cuando contengan bebidas tributables, a distinción de los demás envases que pasan con el producto a poder del comprador ya que estos últimos están exentos del pago de arbitrios de acuerdo con el inciso 11 del artículo 83 de la Ley núm. 85 de 1925, enmendada por la Ley número 83 de 1931, o sea, la Ley de Arbitrios, que, en lo pertinente, dice:

" . . . Disponiéndose, además, que el impuesto establecido por las secciones 62 y 16 a de esta Ley no gravará: . . . 11. La venta, uso o consumo de artículos importados o fabricados en el país que se utilicen como envases o en la presentación o preparación de productos destinados para la venta o para la exportación, siempre que los citados artículos pasen con el producto a poder del comprador."

La clasificación hecha por la Legislatura se basa en el uso especial a que se dedican los envases y es por dicho uso que se impone el arbitrio. ¿Es razonable esta clasificación? Consideramos que lo es.

El artículo 2, sección 1, de la Carta Orgánica provee que "No se pondrá en vigor en Puerto Rico ninguna ley que privare a una persona de . . . propiedad sin el debido procedimiento de ley, o que negare a una persona de dicha isla la protección igual de las leyes," fraseología ésta similar a la contenida en la Enmienda Catorce de la Constitución Federal e interpretándola en el caso de *San Juan Trading Co.* v. *Sancho, Tesorero,* 114 F.2d 969, 971, se dijo que "Esta cláusula, como la Enmienda Catorce a la Constitución de los

Estados Unidos, en ninguna forma limita el poder de la Legislatura de Puerto Rico para clasificar los objetos de legislación o las personas afectadas por ella en tal forma que sujete a diferentes clases a diferentes tipos contributivos. (Citas.) Empero, tal clasificación tiene que estar razonablemente relacionada con el objeto de la legislación y debe estar basada en alguna distinción que pueda racional e imparcialmente constituir la razón para la diferencia en la contribución.''

Al confirmar nuestra decisión en el caso de *Rivera* v. *Corte*, 62 D.P.R. 513, en el cual discutimos ampliamente esta cuestión, la Corte de Circuito en *Rivera* v. *Buscaglia*, 146 F.2d 461 (1944), se expresó en esta forma, a la página 465:

'' . . . Si bien se ha reconocido con frecuencia que una clasificación estatutaria puede ser tan denigrante y carecer de base racional de manera tal que esté en pugna con las garantías constitucionales, son muy pocos los casos y ocurren esporádicamente en que se haya anulado una ley por este fundamento. En el campo contributivo, más que en cualquier otro campo, 'las legislaturas gozan de la mayor libertad para clasificar. Toda vez que los legisladores necesariamente están familiarizados con las condiciones locales, cosa que no ocurre con esta Corte, la presunción de constitucionalidad sólo puede ser vencida por la más clara demostración de que una clasificación discrimina hostil y opresivamente contra personas y clases específicas.' *Madden* v. *Kentucky*, 1940, 309 U.S. 83, 88, 60 S. Ct. 406, 408, 84 L. Ed. 590, 125 A.L.R. 1383.''

En el caso de *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78, se expresaron en forma completa las reglas establecidas por la Corte Suprema de Estados Unidos para determinar si una ley es contraria a la cláusula constitucional sobre igual protección de las leyes y aún cuando las citamos en el caso de *Pueblo* v. *Avilés*, 54 D.P.R. 272, 281, es conveniente citarlas de nuevo. Dicen así:

''1. La cláusula sobre igual protección de las leyes contenida en la enmienda décimocuarta no priva a los Estados de la facultad de establecer clasificaciones en la adopción de leyes de orden público (*public policy*), sino que por el contrario permite el ejercicio de una

amplia discreción en ese sentido impidiendo las clasificaciones solamente cuando se han hecho sin una base razonable y por consiguiente resultan puramente arbitrarias.

"2. Una clasificación que descanse en una base razonable no infringe esta cláusula constitucional simplemente porque no se haya hecho con una precisión matemática o porque en la práctica resulte en alguna desigualdad (*inequality*).

"3. Cuando se impugna la clasificación, si puede concebirse cualquier estado de hechos que la justifique, se presumirá que tal estado de hechos existió en la fecha de la aprobación de la ley.

"4. El que impugne la clasificación contenida en una ley tiene el peso de la prueba para demostrar que no descansa sobre una base razonable y que es esencialmente arbitraria."

¿Qué discrimen "hostil y opresivo" ha sufrido la apelada como consecuencia de la clasificación hecha por la legislatura imponiendo un arbitrio a los envases usados para los fines especificados en la sección 4, supra? Ninguno a nuestro juicio. El arbitrio tenían que pagarlo todos los que se dedicaban al mismo negocio que la apelada en toda la Isla de Puerto Rico y era igual para todos. Correspondía a la apelada demostrar que la clasificación no descansa sobre una base razonable y que es esencialmente arbitraria y no lo ha hecho, pues "si puede concebirse cualquier estado de hechos que la justifique, se presumirá que tal estado de hechos existió en la fecha de la aprobación de la ley." Y en el caso específico ante nos podemos concebir que la intención legislativa al hacer la clasificación de los envases conteniendo bebidas alcohólicas tributables que eran vendidos con el producto al comprador, diferenciándolos así de los demás envases exentos de tributación, lo fué precisamente por contener esa clase de bebidas aun cuando como consecuencia se hiciera más costoso el precio de venta de dichas bebidas. Como dijo el Juez Stone en su opinión disidente en el caso de *Colgate* v. *Harvey*, 296 U. S. 404, 438 (revocado por el caso de *Madden* v. *Kentucky*, supra, de manera que hoy prevalece el criterio expuesto por el Juez Stone en su disenso): "Si aparece o puede razonablemente asumirse que (la clasificación) es con

el propósito de promover un fin público permisible, no puede ser condenada porque una clase debe negar una contribución que otra no paga.'' Y el fin público permisible que puede razonablemente asumirse que tuvo en mente el legislador promover fué el de hacer más gravosa la adquisición de bebidas alcohólicas como producto no necesario ni indispensable para el bienestar general de la comunidad sino más bien perjudicial en su consumo excesivo.

█ No constituye el arbitrio atacado, como sostiene la apelada, una contribución adicional a la propiedad y asumiendo que lo fuera ese hecho en sí no lo haría ilegal pues como dijimos en *Pueblo* v. *Garzot*, 24 D. P. R. 231, 236, '' . . . el mero hecho de que una contribución sea doble no afecta a su validez, a menos que funcione de un modo desigual sobre la misma clase o clases de la comunidad. (Cita.) La cuestión de si debe haber o no una doble contribución generalmente es una cuestión que pertenece a la discreción de la Legislatura misma.'' Aun cuando asumiéramos que el arbitrio es sobre la propiedad—y ya hemos dicho que es por el uso de los envases—el mismo recayó por igual sobre todos los que estaban en las mismas condiciones que la apelada.

Pregunta la apelada que '' . . . aun aceptando que pudieran escogerse los envases conteniendo· licores tributables como una clase separada, bajo qué regla podría sostenerse el discrimen extraordinario de imponer el arbitrio *cada vez que se use* el envase, si ninguno de los otros artículos vendidos, *usados* o consumidos en Puerto Rico, pagan arbitrios más que una sola vez?'' (Bastardillas de la apelada.) La contestación es que ni la sección 4, ni ninguna otra de la ley, dispone que los arbitrios deben ser impuestos y cobrados más de una vez. Además, que ese hecho no surge en el presente caso ya que a la apelada en ningún momento se le cobró dos veces por el uso de sus envases y su causa de acción no está basada en tal situación de hechos.

Consideramos que los casos citados por la corte inferior y por la apelada no son aplicables a los hechos del presente y que no necesitamos distinguirlos específicamente.

*Debe revocarse la sentencia apelada y dictarse otra declarando sin lugar la demanda en sus dos causas de acción, con costas.*