JOSÉ MIRANDA RODRÍGUEZ, demandante y apelante, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA, demandado y apelado.

Número 10912.

*Sometido:* 2 de diciembre de 1953. *Resuelto:* 3 de noviembre de 1954.

*Félix Ochoteco, Jr.,* abogado del apelante; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del apelado.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

El hogar seguro (*homestead*) disfrutó de exención contributiva en Puerto Rico por primera vez, al aprobarse la Ley núm. 27 en 12 de abril de 1941—Leyes de Puerto Rico de ese año, pág. 457—enmendando el inciso (*a*) del art. 291 del Código Político. En virtud de esta enmienda el indicado artículo pasó a leer, en lo pertinente, como sigue:

"Artículo 291.—Estarán exentas de tributación para la imposición de contribuciones las propiedades siguientes:

(*a*) La propiedad de un individuo cuyos bienes, en su valor total, sean tasados en menos de cien (100) dólares; y como protección para el hogar seguro (*homestead*), también estará exenta de tributación para la imposición de contribuciones toda propiedad en la cual el dueño, siendo jefe de familia, tenga constituído su hogar seguro (*homestead*), siempre que sus bienes, en su valor total, sean tasados en menos de mil (1,000) dólares; Disponiéndose, que las circunstancias que aquí se establecen como justificadoras de la protección de hogar seguro (*homestead*) deberán acreditarse mediante declaración jurada que el interesado hará ante el colector de rentas internas, en impresos que éste le suministrará libre de todo costo.

\* \* \* \* \* \* \*"

El apelante José Miranda Rodríguez es dueño de una propiedad, consistente en casa y solar, sita en el pueblo de Cataño, Puerto Rico, y en dicho inmueble tiene constituído su hogar seguro (*homestead*), el cual venía disfrutando de exención contributiva a tenor con las disposiciones de la citada

Ley núm. 27. En el año 1951 la Legislatura volvió a enmendar el art. 291 del Código Político, (¹) mediante la aprobación de la Ley núm. 119 de 24 de abril de ese año—leyes de P. R. de 1951, pág. 263. En cuanto al aspecto que aquí interesa, por la enmienda se eximió de tributación para la imposición de contribuciones a "toda propiedad en la cual el dueño tenga constituído su hogar seguro siempre que sus bienes, en su valor total, sean tasados en menos de dos mil quinientos (2,500) dólares." Este reajuste en el valor total de tasación de los bienes del dueño del hogar seguro, aumentándolo de $1,000 a $2,500, se debió, según se expresa en la exposición de motivos de la referida Ley núm. 119, a que se esperaba un alza general en el valor tasado de todas las propiedades en Puerto Rico con motivo de la retasación de la propiedad que se estaba realizando por disposición de otra ley aprobada en el 1947—Ley núm. 117 de 9 de mayo de ese año, conocida por el nombre de "Ley de Catastro, Clasificación y Tasación de la Propiedad." ²

Al efectuarse esta retasación, el inmueble del apelante, que es el único que él posee, fué tasado en $2,670. No hay controversia en cuanto a la corrección de esta tasación. Así las cosas, el Tesorero procedió a imponerle una contribución a dicha propiedad para el año económico 1951–52 de $48.59. Al ser requerido de pago el contribuyente pagó solamente la suma de $2.70, que era la parte de la contribución impuesta con la cual estaba conforme y que correspondía al exceso de tasación sobre $2,500 o sea de $170. Acudió entonces ante el anterior Tribunal de Contribuciones, hoy Tribunal Superior, interponiendo una querella en la que después de exponer los hechos que dejamos consignados anteriormente, alegó que de conformidad con la Ley núm. 119 de 24 de abril de 1951, él tiene derecho a una exención contributiva de $2,500 como pro-

---

(¹) La Ley núm. 27 de 12 de abril de 1941, había sido ya enmendada por la Ley núm. 42 de 23 de julio de 1947, y la núm. 91 de 5 de mayo de 1948, pero ninguna de dichas enmiendas afectan el problema aquí envuelto.

(²) La revisión de la tasación realizada, a tenor con las disposiciones de esta Ley, se conoce comúnmente como "La Tasación Científica".

tección para el hogar seguro, y que en su consecuencia, sólo viene obligado a pagar contribuciones sobre el exceso de $2,500, por los siguientes fundamentos:

"Porque para que la citada exención de $2,500, establecida por el inciso (a) del art. 291 del Código Político Administrativo de Puerto Rico, a favor de propiedades cuyos dueños tengan constituído su hogar seguro en las mismas, pero siempre que sus bienes, en su valor total, sean tasados en menos de $2,500, sea constitucional, tal exención también tiene que ser concedida a aquellas propiedades en las cuales tengan sus dueños constituído su hogar seguro, luego de haber cumplido los requisitos de dicho inciso (a) del art. 291, supra, y aunque las mismas, en su valor total sean tasadas en $2,500 o más, ya que de no aplicarse la citada exención contributiva, y hasta la expresada cantidad, a estas últimas propiedades, la tantas veces mencionada exención sería contraria a la Carta Orgánica de Puerto Rico porque:

Violaría su art. 2, por quebrantar los principios de uniformidad en la imposición de contribuciones y por negar la igual protección de las leyes, y en su virtud, el derecho a un trato igual, libre de todo discrimen."

Contestó el Tesorero aceptando los hechos esenciales de la querella, pero negó que el querellante no viniera obligado a pagar las contribuciones impuestas, bien por los fundamentos aducidos en la querella o por cualesquiera otros. Al ser notificado de esta contestación el querellante solicitó que se dictara sentencia sumaria, toda vez que no había controversia sobre los hechos ya que el querellado se había limitado a oponerse a las pretensiones del querellante por fundamentos de derecho. Luego de oír a las partes sobre esta solicitud, la corte a quo dictó sentencia desestimando la querella. Apeló el querellante y aunque en su alegato imputa cuatro errores a la corte sentenciadora, conviene en que los mismos "envuelvan idéntica cuestión legal, o sea, la constitucionalidad del art. 291 (a) del Código Político . . . ."

Al declarar la política pública del Gobierno de Puerto Rico respecto a la protección del hogar seguro (*homestead*), nuestra Legislatura estableció una clase que fué la favorecida

con la exención contributiva. La clasificación se hizo a base del valor total de la tasación de todos los bienes de aquellas personas que siendo dueños de una propiedad tenían constituído en ésta su hogar seguro. Así quedó exenta de tributación toda propiedad (hogar seguro) perteneciente a personas cuyos bienes en su valor total, fueron tasados en menos de $1,000 según la Ley 27 de 1941, o $2,500 según la enmienda de 1951.

El problema aquí envuelto se reduce, en último análisis, a determinar si la Legislatura se excedió en sus poderes al establecer dicha clasificación, puesto que de no ser así, el estatuto resistiría con éxito un ataque a su constitucionalidad.

Nuestra anterior Carta Orgánica disponía en su art. 2 que no se pondría en vigor en Puerto Rico ninguna ley "que negare a una persona en dicha isla la protección igual de las leyes", y que "las leyes para la imposición de contribuciones en Puerto Rico serán uniformes." (³)

Creemos innecesario extendernos en la consideración de la cláusula de uniformidad. Bastará repetir lo que tantas veces se ha dicho antes, que esta cláusula no requiere uniformidad intrínseca y sí sólo uniformidad geográfica en todo Puerto Rico. *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 69 D.P.R. 99, y casos allí citados. Pasemos por tanto, a considerar si el estatuto en discusión es insconstitucional porque niega al apelante la igual protección de las leyes.

El problema que afrontaba la Legislatura al crear la exención contributiva a favor del hogar seguro (*homestead*), los motivos que la impulsaron a crear tal exención y las razones para que la misma se limitara a una clase, que la propia Legislatura creó, aparecen claramente de la Exposición de Motivos que figura al comienzo de la Ley núm. 27 de 1941, y la que por su pertinencia copiamos a continuación:

---

(³) El caso que ahora resolvemos surgió cuando regía la Carta Orgánica. No obstante, estas disposiciones fundamentalmente continúan en vigor ya que la Constitución del Estado Libre Asociado de Puerto Rico contiene disposiciones similares. Véase el Artículo II, Sección 7 y el Artículo VI, Sección 3 de dicha Constitución.

"Sección 1.—Exposición de Motivos.—El problema de la vivienda es uno de los más serios con que se confronta el pueblo de Puerto Rico. Entre las clases pobres y las de recursos limitados cobra, en efecto, caracteres de gravedad. El problema abarca dos extremos: la necesidad de proveer facilidades de alojamiento a los que carecen de ellas o se albergan en lugares inadecuados y perjudiciales a la salud, y la de establecer garantías para la conservación del hogar en favor de aquellas familias que, a través de esfuerzos y sacrificios económicos, han logrado hacerse de una vivienda.

Con arreglo a la legislación vigente, el hogar está sujeto a tributación para la imposición de contribuciones, al igual que cualquier otra propiedad destinada a fines lucrativos. Habida cuenta de la situación económica reinante en Puerto Rico y del bajo nivel de los ingresos individuales, el tipo contributivo prevaleciente en la Isla resulta muy alto y constituye una carga pesada para la generalidad de las personas pobres y de recursos limitados que, en muchos casos, no tienen otros bienes que la casa donde albergan a su familia.

De acuerdo con las estadísticas oficiales del Departamento de Hacienda de Puerto Rico, se cuentan por centenares las personas de recursos limitados que no pueden hacer efectivas las contribuciones que gravitan sobre la propiedad en la cual tienen constituídos sus hogares. Como consecuencia de la falta de pago, estas propiedades quedan sujetas a procedimientos de embargo y ventas en pública subasta, en virtud de los cuales muchos jefes de familia pierden sus hogares.

Entendemos que es de la incumbencia del Gobierno proveer todas las facilidades necesarias para que los ciudadanos conserven sus hogares. La propiedad donde se tiene constituído el hogar seguro debe gozar de una amplia protección de ley no sólo en lo que respecta a librarla de embargos y ejecuciones por particulares, sino también por parte del mismo Gobierno, que tiene un justificado interés en que los ciudadanos conserven sus hogares y disfruten de alojamiento adecuado.([4])

---

([4]) Por la Ley núm. 87 de 13 de mayo de 1936, el hogar seguro allí establecido, estaba exento de embargo y venta por deudas contributivas. Sin embargo, la propiedad que constituía el hogar seguro no estaba exenta de contribuciones. La exención establecida por la indicada ley protegía solamente un valor de $500 en la propiedad donde estaba constituído el hogar seguro.

Se declara, por tanto, que es la política pública de esta Ley, establecer una protección para el hogar seguro (*homestead*). Con el propósito de que los beneficios de esta política alcancen al mayor número posible de ciudadanos, esta protección para el hogar seguro debe extenderse hasta donde lo permitan los recursos del Tesoro de Puerto Rico, el normal funcionamiento de las finanzas municipales, y la buena marcha del Gobierno Insular.

Como un primer paso en el logro de esta política de protección del hogar seguro, la Asamblea Legislativa de Puerto Rico considera absolutamente necesario eximir de tributación para la imposición de contribuciones toda propiedad en la cual el dueño, siendo jefe de familia, tenga constituído su hogar seguro (*homestead*), siempre que sus bienes, en su valor total, sean tasados en menos de mil dólares ($1,000)."

La amplia discreción que posee la legislatura en el campo contributivo ha sido reconocida desde hace tiempo. Tradicionalmente la "clasificación" ha sido un método para ajustar los programas contributivos a las necesidades y usos locales a fin de lograr una distribución equitativa en la carga contributiva.(⁵) Sin embargo, la Legislatura no puede ejercer este poder, que no es absoluto, en forma arbitraria o caprichosa. Existen ciertos principios generales establecidos por las decisiones judiciales a los cuales deberá ajustarse el ejercicio de dicho poder so pena de incurrir en una violación constitucional. Comentando la cláusula de la igual protección de las leyes de la anterior Carta Orgánica, se dijo en el caso de *San Juan Trading Co.* v. *Sancho, Tes.* 114 F.2d 969, lo siguiente: "Esta cláusula, como la Enmienda Catorce de la Constitución de los Estados Unidos, en ninguna forma limita el poder de la Legislatura de Puerto Rico para clasificar los objetos de legislación o las personas afectadas por ella en tal forma que sujete a diferentes clases a diferentes tipos de contribuciones (citas). Empero, tal clasificación tiene que estar razonablemente relacionada con el objeto de la legislación y debe estar basada en alguna distinción que pueda racional-

---

(⁵) *Rapid Transit Corp.* v. *New York*, 303 U. S. 573 y casos citados; *Madden* v. *Kentucky*, 309 U. S. 83.

mente e imparcialmente constituir la razón para la diferencia en la contribución." Cuando la clasificación no es arbitraria y descansa sobre una base razonable, no existe discrimen por el hecho de que se imponga contribución a una clase y se exonere a otra, se impongan distintos tipos contributivos o se concedan exenciones a unos y no a otros. *M. J. y S. Cabrero, Sucrs.*, v. *Sancho Bonet, Tes.*, 58 D.P.R. 531; ([6]) *Pueblo* v. *Avilés*, 54 D.P.R. 272. "Si aparece o puede razonablemente asumirse (sic) que (la clasificación) es con el propósito de promover un fin público permisible, no puede ser condenada porque una clase debe pagar una contribución que otra no paga", ([7]) y si la clasificación no es arbitraria, caprichosa o discriminatoria, debe sostenerse la actuación legislativa. De todos modos, el que impugna la clasificación contenida en una ley tiene el peso de la prueba para demostrar que no descansa sobre una base razonable y que es esencialmente arbitraria. Repetidas veces hemos dicho que cuando se impugna la clasificación, si puede concebirse cualquier estado de hechos que la justifique, se presumirá que tal estado de hechos existió en la fecha de la aprobación de la ley. *Rivera* v. *Corte,* 62 D.P.R. 513; ([8]) *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 64 D.P.R. 602; *Barceló & Cía.* v. *Buscaglia, Tes.*, 67 D.P.R. 108 y *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 69 D.P.R. 99.

El apelante en este caso no ha demostrado que la clasificación hecha por la legislatura no descansa sobre una base razonable y que es esencialmente arbitraria. Él se ha limitado a alegar que dicha clasificación le niega la igual protección de las leyes y que discrimina en su contra. Ello no es suficiente para invalidar la ley a base de su inconstitucionalidad. Como dijimos antes, el hecho de que se conceda la

---

([6]) Este caso fué revocado en cuanto a otros extremos en *F. Bacó Soria & Hno.* v. *Tribl. de Contribuciones*, 64 D.P.R. 87.

([7]) Opinión disidente, hoy prevaleciente, en el caso de *Colgate* v. *Harvey*, 296 U. S. 404, 408, citada en *Barceló & Cía.* v. *Buscaglia, Tes.*, 67 D.P.R. 108 y en otras decisiones nuestras.

([8]) Confirmada en *Rivera* v. *Buscaglia*, 146 F.(2d) 461.

exención contributiva a unos y no a otros, no implica por sí solo, que se ha establecido un discrimen. *J. M. y S. Cabrero, Sucrs.* v. *Sancho Bonet, Tes.*, supra y *Pueblo* v. *Avilés*, supra. Posibles diferencias en la carga contributiva, que no se demuestren que sean sustanciales, o basadas en discrímenes que no se demuestren que sean arbitrarios o caprichosos, no caen dentro de la prohibición constitucional. *Ballester* v. *Tribl. de Apelación*, 61 D.P.R. 474. Como el caso de autos fué resuelto a base de una solicitud de sentencia sumaria, sin que el apelante presentara prueba, a excepción de unos expedientes judiciales que carecen de relevancia, el único hecho establecido es el de que el estatuto en controversia le afecta a él (a) porque el apelante es dueño de una propiedad en la cual tiene constituído su hogar seguro y (b) porque a pesar de que cumple con los otros requisitos de ley su propiedad no está cubierta por la exención debido a que el valor total de tasación de sus bienes excede de $2,500, o en otras palabras, que su dicha propiedad tributa mientras que otras propiedades usadas para los mismos fines no tributan si el valor total de tasación de los bienes de sus dueños es menor de $2,500; pero él ha debido demostrar además, para que pudiera prosperar su objeción constitucional, que la legislatura se excedió en sus poderes al aprobar el referido estatuto. *Austin* v. *The Aldermen*, 7 Wall 694, *Supervisors* v. *Stanly*, 105 U. S. 305, y para ello debió demostrar, y no lo hizo, que la clasificación no descansa sobre una base razonable y que es esencialmente arbitraria o caprichosa, o que no está razonablemente relacionada con el objeto de la legislación o que el propósito o efecto de dicha clasificación es un discrimen hostil y opresivo en contra suya y de las otras personas que según alega, se encuentran en su misma situación y no el de promover un fin público permisible. Bastaría con lo dicho para confirmar la sentencia apelada. Sin embargo, ¿puede resolverse, como lo hizo la corte a quo, que el art. 291 (a) del Código Político es constitucional, sin necesidad de considerar otros echos fuera del récord? Creemos que sí.

Para resolver la cuestión constitucional levantada por el apelante no tenemos que descansar en la presunción de constitucionalidad que acompaña al estatuto y la cual sólo puede desvirtuarse con la más explícita demostración de que una clasificación es un discrimen hostil y opresivo en contra de ciertas personas o clases, cosa que no ha hecho el apelante, *Madden* v. *Kentucky*, 309 U. S. 83, o en la presunción de que a la fecha de la aprobación del estatuto bajo ataque, existía un estado de hechos concebible que justifique la clasificación, *Rivera* v. *Corte*, supra y *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, supra, pues tal estado de hechos ha sido cuidadosamente expuesto, y nadie negaría su existencia por ser hechos de conocimiento público, en la Exposición de Motivos, (9) que antecede a la Ley núm. 27 de 1941.

Según la indicada Exposición de Motivos, uno de los propósitos de dicha ley fué establecer garantías para la conservación del hogar a favor de las familias de escasos o limitados recursos económicos. Eran estas familias las más afectadas por el grave problema de la vivienda que la legislatura se preocupaba por resolver. La propiedad donde una persona tenía constituído su hogar seguro tributaba. Debido al bajo nivel de los salarios y a que el tipo contributivo prevaleciente resultaba muy alto y constituía una carga pesada para la generalidad de las personas de escasos recursos económicos que en más de los casos no tenían otros bienes que la casa donde albergaban a sus familias, se contaban por centenares, según las estadísticas del Departamento de Hacienda, las personas dentro de esta categoría que no podían hacer efectivas las contribuciones que gravitaban sobre las propiedades en las cuales tenían constituídos sus hogares y como consecuencia de la falta de pago de las contribuciones sobre sus hogares eran embargados y vendidos en pública subasta. Al conceder la exención contributiva la legislatura consideró estos hechos y en cuanto a las personas, dueñas de propiedades en las cua-

(9) Ya la habíamos copiado literalmente al principio de esta opinión.

les tenían constituído su hogar seguro, estableció una clase a base del valor total de tasación de sus bienes.([10])   En esta forma trazó una línea que separa a aquellas personas incluídas en la clase que corría el riesgo de perder sus hogares por falta de pago de las contribuciones y aquéllas que por su situación económica, no corrían igual riesgo.   Concedió la exención a unos y no a los otros.   Su actuación no fué arbitraria ni estableció un discrimen hostil y opresivo contra los que tributan por razón de que sus propiedades (hogar seguro) no están cubiertas por la exención.   Con mayor razón esto es así si se considera el hecho de que la legislatura extendió la indicada protección al hogar seguro hasta donde lo permitían los recursos del Tesoro de Puerto Rico, el normal funcionamiento de las finanzas municipales y la buena marcha del Gobierno Insular.   Por otro lado, es indiscutible que la clasificación se hizo con el propósito de promover un fin público permisible.   Había pues una base razonable que justificaba la clasificación.   Véase *Rivera* v. *Corte*, supra.

El caso del aquí apelante está muy cerca de la línea divisoria trazada por la legislatura.   Por sólo una diferencia de $170 su propiedad queda fuera de la exención contributiva. Sin embargo, en algún punto había que trazar la línea y ello era incumbencia de la legislatura.   Como dijera el Juez, Sr. Stone en *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, en relación con esta línea divisoria, rechazando un ataque de inconstitucionalidad de la Ley de Compensaciones por Desempleo de Alabama por el fundamento de que se aplicaba a los patronos que tenían ocho o más empleados y no a los que tenían siete:

"Seguramente aquí, y así lo resolvió la corte inferior, no puede haber razón para distinguir, a los fines contributivos,

---

([10]) Aunque el objeto de la exención fué la propiedad es lo cierto que su clasificación se hizo tomando como base la situación económica de su dueño pues como hemos visto no todas las propiedades donde sus dueños tienen constituído su hogar están exentas.   Para que la propiedad goce de la exención, debe cumplirse el requisito personalísimo de que el valor total de tasación de los bienes del dueño de la misma no exceda de $2,500.

entre aquéllos que sólo tienen siete empleados y aquéllos que tienen ocho. Sin embargo, ésta es la clase de distinción que la ley con frecuencia está llamada a hacer. Es solamente una diferencia en número lo que marca el momento cuando termina el día y comienza la noche, cuando las incapacidades de la infancia concluyen y el estado de capacidad legal se asume. Ella separa grandes ingresos que son tributables de aquellos más pequeños que están exentos, como señala aquí la diferencia entre los dueños de negocios mayores que se tributan . . . . Pero si por éstas o cualquiera otra razón él (el estado) puede exentar algunos, el que trace la línea en uno, tres, o siete es peculiarmente un problema para decisión legislativa. La decisión no podría decirse que es arbitraria porque caiga en la zona claroscura entre aquellos miembros de la clase que plenamente pueden y aquellos que plenamente no pueden tributar convenientemente.''

La desigualdad resultante de la selección hecha por la legislatura, que es de lo que se queja el apelante, no quebranta ninguna limitación constitucional. La legislatura no está obligada a imponer contribuciones a todos los miembros de una clase o a ninguno. Puede hacer distinciones de grado, siempre que éstas tengan, como en el caso de autos, una base racional. *Charmichael* v. *Southern Coal & Coke Co.*, supra; *Magoun* v. *Illinois Trust & Saving Bank*, 170 U. S. 283; *Bredlone* v. *Suttles*, 302 U. S. 277. Aun cuando la distinción sea bastante limitada, la clasificación puede descansar en ella. *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389; *Atchison T. & S. F. R. Co.* v. *Mathews*, 174 U. S. 96; *Giozza* v. *Tiernan*, 148 U. S. 657.

El apelante nos ha pedido que para salvar la constitucionalidad del art. 291(a) del Código Político según rige hoy, lo interpretemos, aunque para ello tengamos que legislar judicialmente, en el sentido de que dicho artículo concede una exención contributiva hasta $2,500, a toda propiedad en la cual su dueño tenga constituído su hogar seguro siempre que cumpla con los demás requisitos, aunque el valor total de tasación de sus bienes sea menor o mayor que dicha suma. Descansa fuertemente en las decisiones de este Tribunal en los casos de *F. Febles & Cía.* v. *Sancho Bonet, Tes.*, 50 D.P.R.

778; *J. M. Blanco, Inc.* v. *Sancho Bonet, Tes.*, 55 D.P.R. 389, *Harvey Bros.* v. *Sancho Bonet, Tes.*, 56 D.P.R. 264, *García & González* v. *Tesorero,* 56 D.P.R. 655 y *Domenech* v. *Have-meyer,* 49 F.2d 849.

Creemos innecesario analizar los hechos de estos casos, uno por uno. Dichos casos no nos obligan a llegar a un resultado similar en el de autos. Basta decir que sus hechos presentan un cuadro distinto en cuanto a época, propósitos y fines de la legislación envuelta, relación de la clasificación con los propósitos de la legislación y base de razonabilidad de la misma, así como el fin público perseguido por una y otra legislación. Estas circunstancias no hacen de dichos casos un precedente obligatorio en la decisión del caso deⁱ apelante.

Desde hace muchos años el Tribunal Supremo de los Estados Unidos discutiendo el problema de las clasificaciones en el campo contributivo, dijo que era poco práctico y poco sabio tratar de formular una regla o definición general sobre la materia que abarcase todos los casos y que éstos tenían que decidirse a medida que surgieran. *Bells Gap. R. Co.* v. *Pennsylvania,* 134 U. S. 232. Al pasar el tiempo el mismo tribunal ha establecido ya un grupo de cuatro reglas generales para determinar si una ley es contraria a la cláusula constitucional sobre la igual protección de las leyes. ([11]) Sin embargo, como dijimos en *Rivera* v. *Corte,* supra, "no existe, ni podrá exitir una regla fija en cuanto a lo que constituye razonabilidad en las clasificaciones para fines contributivos". La diferencia que existe entre este caso y los invocados por el apelante es un buen ejemplo de ello. No pueden tratarse como si las situaciones en uno y en los otros fueran las mismas. *Goesaert* v. *Cleary,* 335 U. S. 465. ([12]) Aquí hemos en-

---

([11]) Dichas reglas aparecen copiadas en los casos de *El Pueblo* v. *Avilés,* supra, y *Barceló & Cía.* v. *Buscaglia, Tes.,* supra.

([12]) Este es uno de los casos más recientes (1948) en que se sostuvo la clasificación a pesar de que la distinción establecida para justificarla era muy reducida. Las leyes de Michigan requerían que en las ciudades de determinada población, los cantineros (bartenders) se proveyeran de una li-

contrado que la clasificación descansa sobre una base razonable, y siendo así, venimos obligados a resolver que el art. 291 (a) del Código Político según fuera enmendado, primero por la Ley núm. 27 de 12 de abril de 1941 y últimamente por la Ley núm. 119 de 24 de abril de 1951, es constitucional y que por lo tanto, el apelante no tiene derecho a la exención que reclama.

*Por los fundamentos expuestos, la sentencia apelada será confirmada.*

cencia.  A las mujeres, con excepción de las esposas e hijas de los dueños de cantinas (bars) no se le expedían dichas licencias y por tanto, no podían servir de cantineras (barmaids).  Se alegó una violación de la cláusula constitucional sobre la igual protección de las leyes.  Se resolvió que tanto la distinción hecha entre hombres y mujeres como la hecha entre las esposas e hijas de dueños de cantinas y las demás mujeres, descansaba en una base racional.  La distinción entre las mujeres se justificó a base de que la vigilancia que mantenía el esposo o padre dueño de la cantina reducía a un mínimo los riesgos que corría una cantinera si no tuviera tal protección.