## UNITED STATES v. J. D. ILER BREWING CO.

### (Circuit Court of Appeals, Eighth Circuit. February 9, 1903.)

### No. 1,777.

1. INTERNAL REVENUE—WAR REVENUE TAXES—PROPRIETARY MEDICINES.

A mild form of beer, put up and sold by the manufacturer in bottles, labeled "J. D. Iler's Rochester Tonic," was subject to the special stamp tax imposed by Schedule B of the war revenue act of June 13, 1898 (30 Stat. 462), which required the payment of such tax on every bottle containing any tonics or medicinal preparations or compositions whatever, or (section 20 [U. S. Comp. St. 1901, p. 2297]) "which are advertised on the package or otherwise" as remedies or specifics, or as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, "use or effect"; and it is not exempt from such tax because the manufacturer paid the revenue tax thereon as beer before it was bottled, since it cannot be presumed that it violated the provisions of Rev. St. § 3449 [page 2277], which makes it a criminal offense to ship or remove any spirituous or fermented liquors under any other than their proper name, and the article was, moreover, correctly designated as a tonic.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Schedule B of the act of Congress of June 13, 1898 (30 Stat. 462), provides as follows: "For and upon every packet, box, bottle, pot, or phial, or other inclosure containing any pills, powders, tinctures, troches or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters (except natural spring waters and carbonated natural spring waters), essences, spirits, oils, and all medicinal preparations or compositions whatsoever, made and sold, or removed for sale, by any person or persons whatever, wherein the person making, or preparing the same has or claims to have any private formula, secret, or occult art for the making or preparing the same, or has, or claims to have, any exclusive right or title to the making or preparing the same, or which are prepared, uttered, vended, or exposed for sale under any letters patent, or trade-mark, or which, if prepared by any formula, published or unpublished, are held out or recommended to the public by the makers, venders, or proprietors thereof as proprietary medicines, or medicinal proprietary articles or preparations, or as remedies or specifics for any disease, diseases, or affection whatever affecting the human or animal body"—shall pay stamp taxes as thereafter set forth. Section 20 of the same act [U. S. Comp. St. 1901, p. 2297] provides: "The stamp taxes provided for in Schedule B of this act shall apply to all medicinal articles compounded by any formula, published or unpublished, which are put up in style or manner similar to that of patent, trade-mark, or proprietary medicine in general, or which are advertised on the package or otherwise as remedies or specifics for any ailment, or as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, use, or effect."

Section 3449 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 2277] provides that: "Whenever any person ships, transports, or removes any spirituous or fermented liquors or wines, under any other than the proper name or brand known to the trade as designating the kind and

quality of the contents of the casks or packages containing the same, or causes such an act to be done, he shall forfeit such liquors or wines, and casks or packages, and be subject to pay a fine of five hundred dollars."

The plaintiff, a brewing association, manufactured and put on the market, among other products, one which it bottled and labeled "J. D. Iler's Rochester Tonic, Kansas City, Mo. U. S. A.," and sold the same as a tonic, and had a large sale in localities where the laws prohibited the sale of beer. The proper officers of the United States Internal Revenue Department assessed a tax against the plaintiff for the manufacture and sale of this article under section "b" of the act of Congress quoted, which the plaintiff paid under protest, and brought this suit to recover it back. The plaintiff recovered in the lower court, and the United States sued out this writ of error.

A. S. Van Valkenburgh and D. P. Dyer (William Warner, on the brief), for plaintiff in error.

James H. Harkless (John O'Grady and Charles S. Crysler, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It appears the article which the plaintiff put up in bottles and labeled "J. D. Iler's Rochester Tonic, Kansas City, Mo. U. S. A.," and which it put on the market and sold as and for a tonic, was "a mild form of beer" containing "about two per cent. of alcohol," and that the plaintiff paid the revenue tax of $2 per barrel on the same as beer before it was bottled. The contention of the plaintiff is that this article is not a tonic within the meaning of Schedule B of section 30, above quoted, and for that reason is not liable to the stamp tax on tonics imposed by that section.

Schedule B of section 30 includes "every * * * bottle * * * containing any * * * medicinal preparations or compositions whatsoever, * * * or which, if prepared by any formula, published or unpublished, are held out or recommended to the public by the makers, venders, or proprietors thereof as proprietary medicines, or medicinal proprietary articles or preparations, or as remedies or specifics for any disease, diseases, or affection whatever affecting the human or animal body." And section 20 provides that the stamp taxes provided for in Schedule B shall apply to all articles "which are advertised on the package or otherwise as remedies or specifics for any ailment, or as having any special claim to merit, or to any peculiar advantage in mode of preparation, quality, use, or effect."

The court does not feel called upon to go into any extended inquiry as to the exact nature of this tonic, or its value for medicinal purposes. It is sufficient to say that its medicinal virtues probably equal, if they do not excel, those of the majority of the popular tonics on the market for the sale of which stamp taxes are assessed and paid without question. Alcohol was present in this tonic, and probably constituted its chief tonic quality, as it does in many tonics. A tonic is defined to be "any remedy which improves the tone or vigor of the fibres of the stomach and bowels or of the

muscular fibres generally." Century Dictionary, tit. "Tonic." Among the drugs or preparations which are classed as tonics are "weak alcoholic beverages in very moderate quantities." Universal Cyclopaedia, tit. "Tonic." The same authority says: "The stimulant and tonic properties of beer are due to the alcohol and bitter principle of the hop, while its nutritive value is ascribed to the extractive matters derived chiefly from the malt. The exact character of many of the constituents of beer is not known." Id. tit. "Beer."

Beyond all question the article put on the market by the plaintiff and labeled as a tonic was a tonic as that term is defined by standard authorities. Whatever else it contained, it contained alcohol and the bitter principle of the hop in proportions that made it a mild tonic, instead of an intoxicating beverage. This is undeniable, since the plaintiff explains that its reason for putting the article up in the manner it did was to sell it in the Indian Territory and the state of Kansas and other prohibition localities, where it was unlawful to sell ordinary beer and other intoxicating beverages.

It is common knowledge that physicians frequently prescribe some kinds of beer as a tonic to be taken by their patients for physical ailments. The word "tonic" in itself signifies to the common understanding a preparation having medicinal qualities. The plaintiff unquestionably used the word in this sense, as it well might do, for, as we have seen, the alcohol and hop extract which the preparation contained did constitute it a tonic according to all definitions of that term, which might well be used, and often is used, for medicinal purposes; and brought it directly within the terms of the statute which embraces every medicinal preparation or composition whatsoever which is held out as having remedial properties, or as remedies for any diseases or affections of the human body, or which are advertised on the package or otherwise as remedies for any ailment, or as having any special claim to merit or to any peculiar advantage in mode of preparation, quality, use, or effect. By labeling its bottles "J. D. Iler's Rochester Tonic" the plaintiff did thereby distinctly advertise on the package that its tonic had tonic or medicinal qualities. The statute does not require the ingredients of the tonic or its mode of preparation to appear on the package. The plaintiff will be presumed to have conformed to the law, which prohibited it under heavy penalties from shipping or removing its fermented liquors under any other than the proper name to designate their kind and quality. The plaintiff knew the ingredients and qualities of its products, and with this knowledge, and the further knowledge that the law required it under heavy penalties to mark or label its packages with "the proper name" of their contents, it deliberately chose to name and label this product "Rochester Tonic," and put it on the market as such, and obtained an extensive sale for it in that character. Having enjoyed all the benefits of its sale as a tonic, it is now too late to call it by another name for the purpose of escaping taxation. Law and morals alike forbid the allowance of such a claim. We feel constrained to accept the name the plaintiff itself bestowed on its product under the most serious sanctions, and thus acquit it of a deliberate intention to perpetrate a fraud on the pub-

lic, and violate the criminal laws of the United States. Moreover, to hold otherwise would give the plaintiff a great and unfair advantage over its competitors in the fermented liquor trade.

It is said that to compel the plaintiff to pay a stamp tax on this product will be subjecting it to double taxation; but it is not so. A tax paid on beer in the barrel does not exempt that product from a stamp tax when it possesses mild tonic properties, and is put up in bottles, and named and labeled in a manner that brings it within the purview of Schedule B. The plaintiff voluntarily assumed the obligation to pay the stamp tax when it bottled and labeled and named it a tonic, which, as we have seen, it really was.

It was amply compensated for paying a stamp tax by the extended sale of its tonic to persons who wanted to purchase a tonic, and not beer, or any stronger beverage, and by its very extended sale in localities where beer could not be sold.

For the sale of "Rochester Tonic" the plaintiff paid no tax until it paid the tax which it seeks in this suit to recover back. Moreover, it would be entirely competent for Congress to impose a tax on beer in barrels and an additional tax on it when put up in bottles.

If the plaintiff had been proceeded against criminally for a violation of section 3449 of the Revised Statutes, it is not doubted but what it could and would have successfully defended the prosecution upon the ground that the contents of these bottles was not ordinary beer, but a mild tonic, and that the bottles were, therefore, truthfully labeled.

The judgment of the Circuit Court is reversed, and the cause remanded, with instructions to dismiss the plaintiff's petition.