MONLLOR & BOSCIO SUCRS., *S. en C.,* Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8444. Argued November 4, 1942.—Decided November 18, 1942.

64

*Harry Manuel Besosa* for appellant. *George A. Malcolm, Attorney General,* and *A. E. Franco Cabrero, Assistant Attorney General,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In accordance with the Spirits and Alcoholic Beverages Act, approved June 30, 1936 (Laws of 1936, Third Special Session, p. 44), the Treasurer of Puerto Rico collected from Monllor & Boscio, Sucrs., of Ponce, on various quantities of alcohol used by that firm to fortify certain wines which it had manufactured, the total sum of $5,500 under §4, 1(*a*), which levies a tax of $1.20 on each gallon of alcohol below '100 proof.' In view of the fact that according to §4, 2(*a*) and (*b*) of the same act, all wines, including fortified wines, must pay a tax of 30 cents on each gallon the alcoholic content of which is 14 per cent or less by volume, and of 40 cents on each gallon the alcoholic content of which exceeds 14 per cent and does not reach 24 per cent by volume, Monllor & Boscio, Sucrs., paid the same under protest and brought an action to recover the above-mentioned sum, and

alleged that the tax on the alcohol is unconstitutional and void (1) because it constitutes double taxation, and (2) because the collection of these taxes violates the rule of equality and uniformity prescribed by law. The lower court rejected the contention of the plaintiff. It is to be noted that the callenged tax is not the one that is levied on wines already fortified with alcohol, but the one imposed on alcohol originally, and without the act making or creating any exemption in favor of the alcohols which may be used to fortify wines. Section 9 of the act reads thus:

"Section 9.—The tax shall attach to distilled spirits, spirits, and alcohols as soon as they are separated, in either a pure or impure state, by distillation or other process of evaporation, from any, substance, whether fermented or not, even though at any subsequent time they may be transformed into any other substance, either in the original process of distillation or evaporation or by the use of any subsequent process."

And §25 of the same act makes the following exemption:

"Section 25.—The taxes prescribed by this Act shall not be collected on such distilled spirits despatched by a distillery and obtained by any person in accordance with the provisions of the regulations prescribed by the Treasurer, as are to be devoted to industrial, scientific, medicinal, or chemical purposes."

Therefore, according to the act itself, distilled spirits used later to fortify the wines manufactured by the plaintiff have not been the object of any exemption. As stated by Cooley in his treatise on Taxation, to constitute double taxation, the two or more taxes must be (1) imposed on the same property, (2) by the same state or government, (3) during the same taxing period, and (4) for the same purpose. 1 Cooley on Taxation, 4th ed., p. 475, §223.

Moreover, in the absence of an express constitutional prohibition—and our Organic Act fails to contain it—the concept of double taxation does not have the scope attributed to it by the appellant in this case. As was held by this Su-

preme Court in *People* v. *Garzot,* 24 P.R.R. 215, 200: ". . . the mere fact that taxation is double would not affect its validity, unless it operates unequally on the same class or classes of the community. Cooley on Taxation, 3d ed., vol. 1, p. 391 *et seq.* The question whether there should be double taxation or not is generally a matter within the discretion of the Legislature itself."

The authorities are in accord that the tax must fall on all the property affected and not merely on a part thereof, so as to avoid the discrimination or lack of uniformity which is what would render the tax void. As stated by Cooley in his cited work: "Direct duplicate taxation, and by this is meant 'double taxation' in the strict legal sense of the term, means taxing twice, for the same purpose, in the same year, *some* of the property in the territory in which the tax is laid, without taxing all of it a second time; and such taxation is invariably condemned, and . . . has seldom, if ever, been upheld by the courts in a particular case." 1 Cooley on Taxation, 4th ed., p. 475, §223.

In the case at bar the tax has been levied on all distilled spirits and on all wines including fortified wines. Therefore, there is not involved the same property but two articles which are different from each other.

Thus in the case of *Christian Moerlin Brewing Co.* v. *Hagerty,* 8 Ohio Cir. Ct. 330, 4 O.C.D. 276 (Aff. 52 O. St. 671, 44 N. E. 1131), it was held that—

"Tax on raw material and on finished product is not duplicate taxation where a statute separates the raw material from the product and imposes the tax on either class only once."

And in the case of *United States* v. *J. D. Iler Brewing Co.,* 121 Fed. 41, also cited by the lower court, it was held that a tax imposed on beer in barrels and another tax on the same beer in bottles and labeled as a tonic did not constitute double taxation, the court saying:

"A tax paid on beer in the barrel does not exempt that product from a . . . tax when it possesses mild tonic properties and is put up in bottles, and named and labeled in a manner that brings it within the purview of Schedule B. The plaintiff voluntarily assumed the obligation to pay the . . . tax when it bottled and labeled and named it a tonic, which, as we have seen, it really was."

The appellant however, insists that, as §4 of the act provides that "there shall be levied, collected, and paid, *once only,* on the following products now stored or that have been, or may hereafter be, distilled, rectified, produced or manufactured in, or imported or introduced into, Puerto Rico," the taxes which are specified, in the case of alcohol and wine an attempt has been made to levy and collect the amount twice. The appellant is not right, and the lower court properly answered this argument when it said in its opinion:

"By directing that the amount should be collected only once, the lawmaker only meant that once the same had been paid by any person, whether it be the distiller, rectifier, producer, manufacturer, or importer, irrespective of the number of persons through whose hands it might pass before reaching those of the consumer, it would not be further subject to the payment of the tax."

We have already said that in this case two products are involved: the distilled spirit and the wine, and the second excise is levied, not on the alcohol which was used to fortify the wine, but on the new finished product—the wine. And further, that in accordance with §9, *supra,* the amount on the alcohol must be paid immediately after the distillation is completed, "even though at any subsequent time they may be transformed into any other substance . . . Once this tax has been paid, against which no legal objection has been raised, it would be the second tax, that is, the one falling on the wine which might, if proper, be attacked as constituting double taxation. But this was not done by the appellant for the obvious reason that the tax on the alcohol is $1.20 per gallon, while the tax on the wines is only 30 or 40 cents per

gallon. It chose to challenge the validity of the first tax attributing to it the character of double taxation, although, as we have decided, the subsequent tax levied on the wine already fortified as an independent product can not be considered as a tax of the alcohol used for such fortification.

As a second ground, the appellant maintains that the collection of taxes on the alcohol in addition to those on the wine violates the requirement of equality and uniformity established by the Organic Act and by §8 of the Beverages Act itself, which provides as follows:

"Section 8.—The taxes shall be uniform and general both for the article produced outside and brought into Puerto Rico and for that manufactured or produced in Puerto Rico, and they shall be collected by the Treasurer as provided by this Act."

The contention of the appellant lacks merit. Both the wine imported into Puerto Rico and that manufactured here are subject to the same tax without any difference. The fact that the imported wines have had or have not had to pay in the United States for the alcohol, if any, used in fortifying them, is not a question that can be taken into consideration by the Legislature of Puerto Rico in determining the tax which all wines in Puerto Rico must pay, whether the same are imported or domestic. All that our Organic Act requires by its §2, clause 22, is that "the rule of taxation in Puerto Rico shall be uniform," a requirement which is ratified by §8 of the act, *supra,* regarding taxes on spirits and alcoholic beverages, and which is fulfilled by levying equal taxes on all wines alike, since a tax is "uniform" within the meaning of a constitutional provision of this nature, when it is "equal upon all persons belonging to the described class upon which it is imposed." *Atlantic & N. C. R. Co.* v. *City of New Bern,* 147 N. C. 165, 60 S. E. 925; 1 Cooley on Taxation, 4th ed., p. 547. Besides, what force can the contention of the appellant have in so far as the wines are concerned, if the appellant has neither challenged nor paid under protest the tax on said product?

The appellant finally argues that the Legislature amended §25 of the Beverages Act, in the year 1939, in such a way as to eliminate the collection of the tax on the alcohol used to fortify wines manufactured in Puerto Rico, and that this indicates that the intention of the Legislature was not to impose such tax since 1936 when the original act was passed. Indeed, by Act No. 20, approved June 13, 1939, §25 of the act, *supra,* was amended as follows:

"Section 25.—The taxes prescribed by this Act shall not be collected on such distilled spirits despatched by a distillery and obtained by any person in accordance with the provisions of the regulations prescribed by the Treasurer, as are to be devoted to industrial, scientific, medicinal, or chemical purposes, *or to fortify wines.*" (Italics ours.)

That act went into effect ninety days after its approval, that is, on or about September 13, 1939.

There is nothing in the amendment to indicate that it was the legislative intent to make the same retroactive, and in the absence of such a provision, it is firmly established by the authorities that the law in force at the time of the imposition of a tax is the one that determines whether a particular exemption exists, and that a tax exemption will not be given a retrospective effect unless such intention is affirmatively expressed in the act itself; it being held, moreover, that a tax exemption will never be granted by mere implication if the language of the statute admits of any other reasonable construction. See extensive comments on the matter in 2 Cooley on Taxation, 4th ed., p. 1375, §654; p. 1403, §672; and, specifically as to the time an exemptions begins, §711, p. 1498, where it is said: "An exemption becomes effectual from the time the constitution, statute or ordinance takes effect."

If the act granting the exemption by the amendment of 1939 did not become effective until September of that year,

and did not provide any retroactive effect for the same, the interpretation of the appellant can not prevail.

The judgment appealed from must be affirmed.