Barceló & Cía., S. en C., Plaintiff and Appellee, *v.* Rafael Sancho Bonet, substituted by Rafael Buscaglia, Treasurer of Puerto Rico, Defendant and Appellant.

No. 9289. Argued November 13, 1946.—Decided March 31, 1947.

*Luis Negrón Fernández, Acting Attorney General (E. Campos del Toro, former Attorney General, on the brief), and J. B. Fernández Badillo, Deputy Attorney General,* for appellant. *Félix Ochoteco, Jr.,* and *Luis E. Dubón* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Two questions are involved in this appeal. The first is whether the alcoholic beverage manufactured and sold by the appellee is a "spirit" under the definition thereof found in § 2(b) of Act No. 1 of March 12, 1934 (Laws of 1934, p. 136), and re-enacted by Act No. 1 of June 29, 1935 (Spec. Sess. Laws, p. 2), which is the "Beverage Act" of Puerto Rico, and as such, subject to the payment of the tax provided by § 3(c) thereof. The second is whether the bottles and flasks used by the appellee as containers for its product are subject to the payment of the tax provided by § 4 of the said Act. The facts briefly summarized are as follows:

Barceló & Cía., S. en C., is engaged in rectifying and manufacturing alcoholic beverages for human consumption. It obtained the corresponding rectifier's license pursuant to the Beverage Act of Puerto Rico and devoted its entire production for sale. For this purpose it bottled the same in glass bottles or flasks. Between August 1, 1934 and July 15, 1935 the appellee notified the Treasurer of Puerto Rico that it had manufactured and ready for sale 512,374 liters of an alcoholic beverage known as rum produced by mixing water with distilled alcohol. This mixture was stored and left to age in suitable containers. Later older alcoholic spirits or wine were added thereto to improve the product. On these 512,374 liters of alcoholic beverage appellee paid under protest taxes amounting to $102,376.80 at the rate of twenty cents per liter or a fraction thereof. This tax was imposed by appellant under § 3(c) of the Beverage Act. The appellee seeks the refund of this tax in the first cause of action. In the second it seeks refund of $7,773.54 which was also paid under protest as a tax imposed by appellant under § 4 of the same Act, on the bottles or flasks introduced into Puerto Rico by the appellee in which it bottles its product for sale.

The lower court granted the relief prayed for in the complaint in both causes of action and the Treasurer appealed.

 We turn to an examination of the first question. Section 3(c) of the Beverage Act provides, insofar as pertinent, that:

"There shall be levied, collected, and paid on the following beverages produced in, or imported or brought into Puerto Rico, a tax of: . . . (c) . . . twenty (20) cents on every liter of spirits, and a like tax on any other quantity or a fraction thereof . . ."

Section 2(b) thereof defines the word "spirits" thus:

"The word 'spirits' means any beverage which contains alcohol obtained by distillation, mixed with potable water and other substances in solution, including brandy, *rum*, whiskey, cordials, and gin." (Italics ours.)

The lower court held that, pursuant to the evidence presented, the following facts had been proved:

"The uncontradicted evidence of the plaintiff shows that it paid the defendant, in his capacity as Treasurer of Puerto Rico, a tax of twenty cents per liter or fraction thereof, on the 512,374 liters of alcoholic beverages referred to in the complaint which was produced by the plaintiff by mixing water with alcohol purchased from the Puerto Rico Distilling Company, at 190 degree proof, with the exception of 51,500 liters, to which it also added wine. According to this evidence, the plaintiff's product was as to 460,874 liters, alcohol diluted with water in order to reduce its alcoholic content from 190 degree proof as obtained from the distillery, to 95 degree proof, it being thus offered for sale to the public, and as to the other 51,500 liters, the alcohol was also diluted with water in the same manner as above, but in addition wine was also added, and as thus diluted and mixed with wine, it was offered for sale to the public. This evidence also showed that the tax of 25¢ per liter or fraction thereof corresponding to the alcohol used by plaintiff in the elaboration and production of the 512,374 liters of the aforesaid alcoholic beverage was paid by the plaintiff as part of the purchase price of said alcohol when it bought it from the Puerto Rico Distilling Company in Arecibo, Puerto Rico, at 190 degree proof. Plaintiff's evidence as well as the admissions contained in defendant's answer showed that the alcoholic beverage referred to in the complaint was sold by the plaintiff in bottles or flasks which were not manufactured in Puerto Rico and were brought here empty from outside of Puerto Rico, it

being likewise shown that due to the liquid nature of this alcoholic beverage, it necessarily had to be bottled in order to be offered for sale; that plaintiff bottled the beverage in its factory in Arecibo, delivering the containers with the alcoholic beverage contained therein directly into the hands of the purchaser of the product, the bottling of said beverage being one of the usual, necessary, and indispensable steps in the business or industry of rectifying and dealing with alcoholic beverages in which plaintiff was engaged.''

And based on these facts and after citing §§ 3(c) and 2(b), *supra,* the lower court held that ''a mixture of alcohol obtained by distillation with potable water only is not a 'spirit' as defined by the Act, but merely diluted alcohol, alcohol reduced to a lower degree of proof by adding water, but not ceasing to be alcohol.'' It further held that, according to the testimony given by an expert witness, Angel M. Pesquera, and the definitions contained in dictionaries, ''rum'' is a product of distillation and that since the beverage produced by plaintiff is ''a mixture of alcohol and potable water it is simply diluted alcohol, and a mixture of alcohol with water and wine is alcohol diluted with wine, which mixture according to . . . Section 2(e)[1] of the Beverage Act is also 'alcohol'.'' Consequently, it decided that the beverage produced by plaintiff was not a ''spirit'' and therefore not subject as such to the tax provided by §3(c), *supra.* Finally, the lower court held that if said beverage were a ''spirit'', the tax would be illegal because it constituted double taxation inasmuch as a tax had already been paid on the alcohol originally used; that the imposition of another tax on the beverage produced with said alcohol when it was mixed with water or with water and wine, would make the tax confiscatory.

---

[1] This Section provides:

''The words 'alcoholic beverages' or 'beverage' include the four varieties of liquor above defined (alcohol, spirits, wine and beer) and any liquid or solid, patented or not, containing alcohol, spirits, wine, or beer and capable of being consumed by a human being. Any liquid or solid containing more than one of the four varieties above defined shall be considered as belonging to that variety which has the highest degree of alcohol, according to the order in which they are above defined, except as provided in subsection (c).''

Section 2 of the Beverage Act defines in several sub-divisions a series of terms used in the Act, but it limits these definitions by saying that "In the interpretation of this act, *unless the context indicates a different meaning,"* these words shall have the meaning given them in said subdivisions. (Italics ours.) The lower court, in our judgment, disreg-arded this rule of interpretation in limiting the definition of the word "rum" to the explanation given by Pesquera and to the definitions contained in different dictionaries to the effect that "rum" is solely the result of distillation and that, since the beverage produced by the appellee was the result of alcohol mixed with water and wine, this beverage was sim-ply diluted alcohol. The trial court did not take into consid-eration or mention subdivisions (*f*) and (*g*) of § 2, which read as follows:

"(*f*) The word 'distiller' means every person who elaborates distilled spirits, or who, by any process of distillation, separates spirits, either pure or impure, from any substance, whether fermented or not; or who, being in possession or having the use of a still, makes, prepares or is in possession of any substance suitable for distillation.

"(*g*) The word 'rectifier' means every person who rectifies or redistills distilled spirits by a process other than that originally used, and continues the distillation of any fermented substance through the use of closed vessels or pipes until the manufacture thereof is completed; and every person who, without rectifying or redistilling distilled spirits, shall color, filter, clarify, refine, or fortify the same by mixing said spirits or other liquor with any substance other than water; or who shall mix, color, fortify, carbonate, or compound liquors under the name of whiskey, gin, brandy, rum, cordial, bitters, prepares, or is in possession of any substance suitable for distillation; under any other name whatsoever, except wine."

Appellee had a rectifier's license and it is an admitted fact that it was engaged in the industry of rectifying and manufacturing alcoholic beverages for human consumption. Within the meaning of the word rectifier, as it appears in subdivision (*g*)—quite different from the word distiller of subdivision (*f*.)—is included "every person who *without recti-*

*fying or redistilling distilled spirits . . .shall compound liquors under the name* of whiskey, gin, brandy, *rum,* cordial, bitters, spirits or 'punches' . . .". So that independent of the fact that rum is included among the "spirits" mentioned in § 2(*b*), the meaning of the word "rum" is not limited to the definition which might be given by an expert or dictionaries, in the sense that this beverage is produced by distillation, but according to the context of § 2(*g*) of the Beverage Act itself, this word "rum" also means liquor compounded by a rectifier under the name of rum, even when this liquor is not the result of distillation. And in the case at bar, appellee compounded liquor under the name "Ron Palo Viejo" and declared it and offered it for sale in the market under this name.[2] (Italics ours.)

At no time did appellee state to the Treasurer of Puerto Rico or to the consumer that its product was diluted alcohol with water or wine, and now it cannot escape the tax thereon after having enjoyed the benefit of selling its product under the name "Ron Palo Viejo." In *United States* v. *J. D. Iler Brewing Co.,* 121 Fed. 41, it was held that: ". . . By labeling its bottles 'J. D. Iler's Rochester Tonic' the plaintiff did thereby distinctly advertise on the package that its tonic had tonic or medicinal qualities. The statute does not require the ingredients of the tonic or its mode of preparation to appear on the package. The plaintiff will be presumed to have conformed to the law, which prohibited it under heavy penalties from shipping or removing its fermented liquors under any other than the proper name to designate their kind and quality. The plaintiff knew the ingredients and qualities of its products, and with this knowledge, and the further knowledge that the law required it under heavy penalties to mark or label its packages with 'the proper name' of their contents,

---

[2] The managing partner of the appellee testified: "Q. How were the bottles and flasks containing this liquor labeled? A. Ron Palo Viejo." (Tr. of Ev. page 13.) And subsequently he stated that they had declared the product to the Treasurer of Puerto Rico as rum. (Tr. of Ev. page 19.)

it deliberately chose to name and label this product 'Rochester Tonic,' and put it on the market as such, and obtained an extensive sale for it in that character. Having enjoyed all the benefits of its sale as a tonic, it is now too late to call it by another name for the purpose of escaping taxation. Law and morals alike forbid the allowance of such a claim. We feel constrained to accept the name the plaintiff itself bestowed on its product under the most serious sanctions, and thus acquit it of a deliberate intention to perpetrate a fraud on the public and violate the criminal laws of the United States.''

Section 21 of the Beverage Act requires that ''All bottles or other ,containers containing alcoholic beverages or medicinal products, of whatever kind or nature, manufactured in Puerto Rico or imported or brought into Puerto Rico, shall bear, attached thereto, a label specifically and distinctly stating the exact alcoholic content by volume of such preparations. The preparations produced or manufactured in Puerto Rico shall be labeled before they are withdrawn from the factory, warehouse, or storage place; and those which are imported or brought into Puerto Rico, shall have such labels placed thereon before they are withdrawn from the Custom House or express office, or from the possession of the owners or agents of the ships in which they are brought to Puerto Rico.'' And § 55 makes it a misdemeanor to label falsely or incorrectly the alcoholic content of any beverage. If, as it appears from the evidence, the original alcohol used was 190 degree proof and in the beverage prepared by the appellee this alcohol was reduced to 95 degree proof and declared and sold as rum, we must accept the name that appellee gave its product and not accept that it was its intention to perpetrate fraud on the public by offering and selling something different from what it declared to appellant and sold to the public.

But the beverage produced by the appellee must be considered as rum not only by virtue of § 2(g), *supra*, but also

because under § 2(b), *supra*, rum is one of the beverages which because it contains alcohol, is a spirit by virtue of the definition in the latter.

The cases cited by the lower court [3] to support the contrary conclusion are not applicable to the facts herein. They construed provisions of various Federal Internal Revenue Acts which prohibited, under penalty of forfeiture, a change in the contents of a receptacle containing distilled spirits after the internal revenue stamps for the tax already paid on said beverages were attached thereto and it was held that the act of having added water or sugar to a product on' which the tax had already been paid did not constitute a violation warranting forfeiture. The question involved in the present case is precisely whether beverages produced by the appellee with the name of rum were subject to the payment of taxes and not whether, after said taxes were paid, it was proper to collect others or to forfeit the product because water or sugar was added thereto.

*Porto Rico Distilling Co.* v. *Treasurer of P. R.*, 32 P.R.R. 530, is not applicable to the facts of the case at bar either. In that case under the Federal Prohibition Act, as well as the insular law, denatured alcohol used in the arts, industries, or as fuel was exempt from taxation and, therefore, a tax could not be imposed on a substitute for gasoline manufactured with denatured alcohol.

We are of the opinion that the alcoholic beverage produced by the appellee, even though it may be technically considered as alcohol diluted with water or wine, constituted a spirit inasmuch as the appellee compounded, declared, and sold it under the name of rum and because being rum it is expressly included in § 2(b), *supra*. We have decided that alcohol diluted with water and stored to age is converted into rum and

[3] *United States* v. *Thirty-Two Barrels of Distilled Spirits*, 5 Fed. 188; *United States* v. *One Package of Distilled Spirits*, 88 Fed. 856; *Three Packages of Distilled Spirits*, 14 Fed. 569; *United States* v. *Graf Distilling Co.*, 208 U. S. 198, 52 L. ed. 452; *United States* v. *Bardenheir*, 49 Fed. 846.

that "When the alcohol was converted into another article, this and not the original alcohol was the substance on which the tax was imposed . . ." *P. R. Distilling Co.* v. *Treasurer of P. R.*, 26 P.R.R. 464, 71.

Since rum is an article different from the original alcohol used in its production, the tax levied on the rum does not constitute double taxation. *Monllor & Boscio, Sucrs.* v. *Sancho Bonet, Treas.*, 61 P.R.R. 63, affirmed in 136 F. (2d) 114. The lower court, therefore, erred in granting the relief prayed for in the first cause of action.

■ We now examine the second question raised by appellant when he contends that the trial court erred in maintaining that § 4 of the Beverage Act, which levies a tax on containers, is applicable when they are introduced into Puerto Rico, only if they contain a beverage of the kind mentioned in the Act but not if they are introduced empty.

Section 4 reads in part thus:

"On every container introduced into, or manufactured in Puerto Rico, *containing alcoholic beverages* and similar products by whatever name known, and spirits and alcohol, if and when *the contents* of said containers are subject to a tax prescribed by this Act, the following tax shall be paid: (they are enumerated)." (Italics ours.)

Section 2(*n*) defines the word container as "any bottle, vessel, jar, demijohn, or any other receptacle containing a beverage mentioned in this Act."

The lower court held that, "since the tax is imposed on the container merely because it contains alcoholic beverages subject to tax, this tax, insofar as it refers to the bottling in Puerto Rico of taxable alcoholic beverages, is a tax on the act of bottling taxable alcoholic beverages (cases). And since the Act levies on the plaintiff a license tax for engaging in the business or industry of rectifying and wholesale dealing in alcoholic beverages, which tax was paid by the plaintiff, an additional tax on said plaintiff for the act of bottling in Puerto Rico taxable alcoholic beverages, even though it be computed or estimated on the number and capacity of the

receptacles used to bottle said alcoholic beverages, this act of bottling being one of the usual steps or elements indispensable and inherent to the business or industry of the manufacture or rectifying and dealing with or selling alcoholic beverages subject to tax in Puerto Rico, is illegal. (Cases)''

The lower court also cited *Monllor & Boscio, Sucrs.* v. *Treasurer,* 49 P.R.R. 562, in which this Court, in referring to this same § 4 of the Beverage Act of 1934, re-enacted by Act No. 1 of 1935, said:

"Pursuant to the above laws, the Treasurer levied and attempted to collect by means of an attachment the tax therein provided on plaintiff's containers. Could he do so? If the cited provisions were in force, *the question would be doubtful;* but on July 30, 1935, the Legislature itself, by the second proviso of section 69 of Act No. 38, Session Laws of 1935, p. 438, prescribed as follows:

'' '. . . *And provided further,* that as regards Section 4 of Act No. 1 of March 12, 1934, and according to Act No. 1 of June 29, 1935, it is hereby determined that the Treasurer of Puerto Rico shall refrain from collecting any tax or taxes the levying and collecting of which may be pending under the provisions of said section.' '' (Italics ours.)

and dismissed as frivolous the appeal from the judgment rendered by the lower court granting an injunction to prevent the imposition and collection of the tax provided by § 4.

In *Monllor & Boscio, supra,* we only expressed doubt as to the validity of the provisions of § 4, *supra,* but we must now decide whether the lower court erred in reaching the conclusion on the grounds it set forth that said tax is illegal.

As we have seen, the Legislature provided by Act No. 38 of 1935 that the Treasurer shall refrain from collecting any tax, the imposition and collection of which is pending under § 4, *supra.* We do not know the reasons it had for making such a provision, but it did, and now in the new Act, the tax on containers provided by § 4, *supra,* has been eliminated entirely.

 Appellant maintains that the tax was imposed under § 4, *supra,* on the use of the containers used for bottling

taxable beverages and that the classification made by the Legislature as to said containers is valid in view of the purpose for which they are used.

Appellee argues in turn that since it has paid for a license as rectifier and for another as a wholesale dealer, and since it has also paid the tax on alcoholic beverages, which cannot be sold unless they are duly bottled, the imposition of an additional tax on the containers constitutes a new tax on property, that is, on the beverages; that this tax is imposed and collected on the act of bottling liquor; that the classification is unreasonable; and that under any of these interpretations the tax is arbitrary and illegal.

We are of the opinion that § 4 imposed the tax on containers introduced into or manufactured in Puerto Rico when used to bottle alcoholic beverages, similar products by whatever name known, spirits and alcohol, provided said products are subject to tax. The aim pursued, that is, the legislative intent, was to tax the containers which contained alcoholic beverages even if they should pass to the purchaser with the product.

It is an admitted fact that § 4 does not impose a tax on the container as such, that is, while it is empty. The tax is imposed on the containers introduced into or manufactured in Puerto Rico, "containing alcoholic beverages . . . if and when the contents . . . are subject to a tax prescribed by this act . . .". It follows therefore that the Legislature has made, for taxation purposes, a special classification of these containers when they contain taxable beverages, as distinguished from other containers which pass with the product to the purchaser, inasmuch as the latter are exempt from taxation pursuant to subdivision 11 of § 83 of Act No. 85 of 1925, as amended by Act No. 83 of 1931, that is, the Internal Revenue Act which, in its pertinent part, says:

". . . *Provided, further,* that the tax prescribed by Section 62 and 16 *a* of this Act shall not attach to: . . . 11. The sale, use or consumption of articles imported into, or manufactured in, the

country, used for containers or in the presentation or preparation of products for sale or export, provided said articles pass with the product to the possession of the buyer.''

The classification made by the Legislature is based on the special use to which the containers are dedicated and it is on this use that the tax is levied. Is this classification reasonable? We believe it is.

Paragraph 1 of § 2 of the Organic Act provides ''That no law shall be enacted in Porto Rico which shall deprive any person of . . . property without due process of law or deny to any person therein the equal protection of the laws,'' which phraseology is similar to that of the Fourteenth Amendment of the United States Constitution which was being construed in *San Juan Trading Co.* v. *Sancho, Treasurer,* 114 F. (2d) 969, 971, when the court said ''This clause, like the XIV Amendment to the Constitution of the United States, in no way limits the power of the Legislature of Puerto Rico to classify the object of legislation or the persons affected by it so as to subject different classes to different rates of taxation. (Cases.) However, such classification must be reasonably related to the object of the legislation and must be based upon some distinction which can rationally and fairly be the reason for different taxation.''

In affirming our judgment in *Rivera* v. *District Court,* 62 P.R.R. 513, wherein we discussed at length this question, the Circuit Court in *Rivera* v. *Buscaglia,* 146 F. (2d) 461 (1944), said at p. 465:

''. . . While it has often enough been recognized that a statutory classification may be so invidious and lacking in rational basis as to offend the constitutional guaranties, the cases are few and far between in which a tax law has actually been invalidated on this ground. In the tax field, more than any other, 'legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a clasification is a hostile and

oppressive discrimination against particular persons and classes.'
*Madden* v. *Kentucky*, 1940, 309 U. S. 83, 88, 60 S. Ct., 406, 408,
84 L. Ed. 590, 125 A.L.R. 1383.''

In *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78,
the rules established by the United States Supreme Court
to determine whether a law is contrary to the equal protection
clause of the Constitution are fully set forth and, although
we cited them in *People* v. *Avilés*, 54 P.R.R. 257, 266, it seems
advisable to cite them again. They read thus:

''1. The equal protection clause of the Fourteenth Amendment
does not take from the State the power to classify in the adoption
of police laws, but admits of the exercise of a wide scope of discretion
in that regard, and avoids what is done only when it is without
any reasonable basis and therefore is purely arbitrary.

''2. A classification having some reasonable basis does not offend
against that clause merely because it is not made with mathematical
nicety or because in practice it results in some inequality.

''3. When the classification in such a law is called in question,
if any state of facts reasonably can be conceived that would sustain
it, the existence of that state of facts at the time the law was enacted
must be assumed.

''4. One who assails the classification in such a law must carry
the burden of showing that it does not rest upon any reasonable
basis, but is essentially arbitrary.''

What ''hostile and oppressive'' discrimination has the
appellee suffered as a consequence of the classification made
by the Legislature in imposing a tax on containers used for
the purposes specified in § 4, *supra?* In our opinion, none.
The tax had to be paid by every person engaged in the same
business as appellee in the whole Island of Puerto Rico and
it was the same for all. It devolved on appellee to show that
the classification does not rest on a reasonable basis and that
it is purely arbitrary but this it has failed to do, for ''if any
state of facts reasonably can be conceived that would sustain
it, the existence of that state of facts at the time the law was
enacted must be assumed.'' And in the specific case before
us we can conceive that the legislative intent in making the

classification of containers containing alcoholic beverages subject to tax which were sold with the contents to the purchaser, thereby distinguishing them from other containers exempt from tax, was precisely because they contained that kind of beverage even though as a consequence the price of said beverages was thereby increased. As Justice Stone said in his dissenting opinion in *Colgate* v. *Harvey,* 296 U. S. 404, 438 (reversed in *Madden* v. *Kentucky, supra,* so that the dissenting opinion of Mr. Justice Stone now prevails): "If it appears or may fairly be assumed that it (the classification) is for the purpose of promoting a permissible public aim, it cannot be condemned because one class must pay a tax which another does not." And the permissible public aim which it may fairly be assumed that the legislator had the purpose of promoting was to make more onerous the purchase of alcoholic beverages as a product which is not necessary or indispensable for the general welfare of the community but rather prejudicial if consumed in excess.

The tax challenged does not constitute, as appellee contends, an additional tax on property. And assuming that it were so, this fact in itself does not make it illegal, for as we said in *People* v. *Garzot,* 24 P.R.R. 215, 220 "... the mere fact that taxation is double would not affect its validity, unless it operates unequally on the same class or classes of the community. (Cases) The question whether there should be double taxation or not is generally a matter within the discretion of the Legislature itself." Even if we assume that the tax is on property—and we have already said that it is on the use of the containers—it would affect equally all those that were in the same condition as appellee.

Appellee inquires ". . . even accepting that the containers containing liquor subject to tax could be classified as a separate class, under what rule could the extraordinary discrimination of levying a tax *each time the container is used* be justified, if none of the other articles sold, *used* or consumed in

Puerto Rico pays a tax more than once?'' (Italics of the appellee.) The answer is that neither § 4, nor any other Act provides that the tax must be levied and collected more than once. Furthermore, this circumstance is not present in this case, since the tax was not collected twice from the appellee for the use of its containers and its cause of action is not based on such facts.

In our opinion, the cases cited by the lower court and by the appellee are not applicable to this case and we therefore need not distinguish each of them specifically.

The judgment appealed from must be reversed and another entered dismissing the two causes of action of the complaint, with costs.

